UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CASE NO.:_____

———————————————————— x
CHRISTOPHER GLOBUS and            :    CLASS ACTION
MICHAELENE DAWSON, on behalf of   :
themselves and others similarly situated,   :    JURY TRIAL DEMANDED
                                  :
                                  :
                  Plaintiff,      :
                                  :
      vs.                         :
                                  :
PIONEER CREDIT RECOVERY, INC., a  :
Delaware Corporation,             :
                                  :
                  Defendant.      :
                                  :
———————————————————— x

## CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

Christopher Globus ("Mr. Globus") and Michaelene Dawson ("Mrs. Dawson"), by and through the undersigned counsel, file this Complaint against Pioneer Credit Recovery, Inc., a Delaware corporation ("Defendant" or the "Company"), and state as follows:

### NATURE OF ACTION

1.      This is a class action brought pursuant to the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §1693, *et seq*., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

2.      The EFTA establishes the basic rights, liabilities, and responsibilities of consumers who use electronic fund transfer services and of persons or entities that offer those services. The primary objective of the EFTA is the protection of individual consumers engaging in electronic fund transfers. The Consumer Financial Protection Bureau has established regulations intended to carry out the purposes of the EFTA.

1

3.      The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  15 U.S.C. §1692(k).  The provisions of the FDCPA declare certain rights available to debtors, forbid deceitful and misleading practices, and prohibit harassing and abusive tactics.

### PARTIES

4.      Mr. Globus is a natural person who is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.  At all relevant times, Mr. Globus resided in the State of New York, County of Erie.  As a natural person, Mr. Globus is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. §1693a(6).

5.      Mrs. Dawson is a natural person who is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant. At all relevant times, Mrs. Dawson resided in the State of New York, County of Erie.  As a natural person, Mrs. Dawson is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. §1693a(6).

6.      Mr. Globus and Mrs. Dawson are husband and wife, and are sometimes hereinafter collectively referred to as "Plaintiffs."

7.      Plaintiffs' obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes— namely a student loan (the "Debt").

8.      Defendant is a Delaware corporation with principal offices located at 26 Edward Street, Arcade, New York.  Defendant can be served through its registered agent Corporation Service Company, 80 State Street, Albany, NY 12207-2543.

9.      Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect the Debt from Plaintiffs, as defined by 15 U.S.C. § 1692a(5).

10.      At all relevant times, Defendant acted on behalf of, and as an agent of, the New York State Higher Education Services Corporation ("NYSHESC").

11.      At the time the NYSHESC hired Defendant to collect the alleged Debt from Plaintiffs, the alleged Debt was in default.

12.      Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

13.      Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

## JURISDICTION AND VENUE

14.      This Court has jurisdiction under 15 U.S.C. § 1692, 15 U.S.C. §1693, and 28 U.S.C. §1331.

15.      Venue is proper before this Court pursuant to 28 U.S.C. §1391(b), where the acts and transactions giving rise to Plaintiffs' action occurred in this State and this District, where Plaintiffs reside in this State and this District, and where Defendant maintains its principal offices in this District.

## FACTUAL ALLEGATIONS

16.     On May 13, 2014, the NYSHESC sent Mrs. Dawson a letter titled "Notice Prior to Wage Withholding."

17.     The May 13, 2014 correspondence advised Mrs. Dawson that NYSHESC would begin garnishing her wages unless she paid the Debt in full or entered into a written repayment agreement with Defendant.

18.     The May 13, 2014 correspondence provided a phone number by which Mrs. Dawson could contact Defendant.

19.     In or about June 2014, Mr. Globus spoke with Defendant by telephone regarding the alleged Debt.

20.     On that call, Mr. Globus was advised by Defendant that the Debt was in default, and that Plaintiffs needed to make monthly payments in order to rehabilitate the Debt, and avoid wage garnishment.

21.     On the call, Mr. Globus provided Defendant with his checking account and routing information for his First Niagara Bank checking account (the "First Niagara Account"), and Defendant and Mr. Globus agreed, orally, that Plaintiffs would make payments on the Debt in the amount of $115 per month by recurring transfer by Defendant from the First Niagara Account.

22.     The First Niagara Account was established primarily for personal, family, or household purposes, and thus, is an "account" as defined by 15 U.S.C. 1693a(2).

23.     Though Defendant thereafter provided Plaintiffs with a "Rehabilitation Acknowledgement Form" for Plaintiffs to complete, Plaintiffs did not sign any written agreement authorizing the fund transfers from the First Niagara Account.

4

24.     In late June 2014, Plaintiffs received from Defendant correspondence dated June 24, 2014 titled "Notice of Intent to Debit Account."  A true and correct copy of the June 24, 2014 correspondence is attached hereto as Exhibit A.

25.     The June 24, 2014 correspondence advised Plaintiffs that Defendant would be taking their "scheduled payment" in the amount of $115 on July 4, 2014.

26.     The June 24, 2014 correspondence stated in capitalized letters: "PLEASE SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION AND TO PAY BY CREDIT CARD OR BANK AUTOWITHDRAWAL."

27.     The reverse side of the June 24, 2014 correspondence contained a form authorizing payment by credit card or by automatic withdrawal from a bank account (the "ACH Agreement").

28.     At the top of the ACH Agreement was the language "[d]etach and return this portion with your payment."

29.     Around this time, Mr. Globus opened a Meridia Community Federal Credit Union checking account (the "Meridia Account"), and closed the First Niagara Account.

30.     The Meridia Account was established primarily for personal, family, or household purposes, and thus, is an "account" as defined by 15 U.S.C. 1693a(2).

31.     Plaintiffs wanted to use the Meridia Account to make the Debt payments to Defendant going forward.

32.      As such, Mr. Globus completed the ACH Agreement that Defendant provided with the June 24, 2014 correspondence.

33.     In order to complete the ACH Agreement, Mr. Globus input his Meridia Account number, routing number, bank name and city and state of the bank onto the form, checked the

box that said "autowithdraw my bank account – ACH," signed and dated the ACH Agreement, and provided his email address as a way for Defendant to contact him.

34.     Thereafter, Mr. Globus returned the ACH Agreement by mail to Defendant.

35.     The ACH Agreement that Mr. Globus signed contained the following provision:

I hereby authorize Pioneer Credit Recovery to initiate an ACH withdrawal or credit charge from my bank account or credit card as shown above.  This authority is to remain in full force and effect until Pioneer Credit Recovery receives written notification from me of its termination in such time and in such manner as to afford Pioneer Credit Recovery and the bank a reasonable opportunity to act on it.

36.     The "ACH withdrawal" referenced in the ACH Agreement was a "preauthorized electronic fund transfer" as defined by 15 U.S.C. §1693a(10).

37.     Notwithstanding Plaintiffs' submission of the ACH Agreement, Defendant processed the $115 payment for July 2014 from the First Niagara Account.

38.     As the First Niagara Account was closed, Defendant was unable to obtain funds from that account, and subsequently, on July 11, 2014, mailed to Plaintiffs correspondence stating that the July 7, 2014 payment had been returned. A true and correct copy of the July 11, 2014 correspondence is attached hereto as Exhibit B.

39.     The July 11, 2014 correspondence advised Plaintiffs to "[p]lease deposit funds sufficient to cover this returned payment from your bank, and call us within 48 hours to notify us that you have resolved this matter."

40.     The July 11, 2014 correspondence contained a blank copy of the ACH Agreement that Mr. Globus had previously completed and submitted to Defendant.

41.     Shortly thereafter, Mr. Globus called Defendant to inquire as to why Defendant attempted to withdraw money from the First Niagara Account when Plaintiffs had submitted the ACH Agreement for the Meridia Account.

6

42.    During the call, Defendant's representative advised Mr. Globus that the ACH Agreement and the July 11, 2014 correspondence were "misleading" because Plaintiffs could not change the account from which Defendant was withdrawing payments by completing and returning the ACH Agreement, and also because Plaintiffs could not elect to have Defendant communicate with them through electronic mail by providing their email address on the ACH Agreement.

43.    Instead, Plaintiffs could only change the account by calling Defendant and requesting such a change over the telephone.

44.    Thereafter, Mr. Globus again provided Defendant with his checking account and routing information for the Meridia Account, and authorized Defendant over the phone to begin taking $115 per month by recurring transfer from his Meridia Account.

45.    Thereafter, Defendant began transferring $115 per month from the Meridia Account.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of two Classes consisting of:

### The EFTA Class

All persons located in the United States who, within one year before the date of this Complaint, signed an ACH Agreement with Defendant containing the following provision: "I hereby authorize Pioneer Credit Recovery to initiate an ACH withdrawal or credit charge from my bank account or credit card as shown above. This authority is to remain in full force and effect until Pioneer Credit Recovery receives written notification from me of its termination in such time and in such manner as to afford Pioneer Credit Recovery and the bank a reasonable opportunity to act on it."

### The FDCPA Class

All persons located in the United States, to whom Pioneer Credit Recovery, Inc., within one year before the date of this Complaint, and in connection with an

7

attempt to collect any purported consumer debt, (1) mailed a copy of its form "Notice of Intent to Debit Account" correspondence, including its form ACH Agreement, (2) where the person completed the accompanying ACH Agreement and returned it to Pioneer Credit Recovery, Inc, (3) but where Pioneer Credit Recovery, Inc. did not honor the ACH Agreement by withdrawing money from the checking or savings account, or charging money on the credit card, provided in the ACH Agreement.

Excluded from the Classes is Defendant, the officers, members, and directors of Defendant, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

47.     The proposed Classes are believed to be so numerous that joinder of all members is impracticable.  The exact number of members of the Classes is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery.  The proposed Classes are believed to be ascertainable in that the names and addresses of all members of the Classes can be identified in business records maintained by Defendant.

48.     Plaintiffs' claims are typical of the claims of the members of the Classes because Plaintiffs' and all Class members' claims originate from the same conduct, practice and procedure on the part of Defendant and Plaintiffs possess the same interests and have suffered the same injuries as each Class member.

49.     Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have retained counsel experienced and competent in class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with the members of the Classes that Plaintiffs seeks to represent.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Classes to

individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

51.     Issues of law and fact common to the members of the Classes predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the both Classes.  Among the issues of law and fact common to the Classes are:

  a.  Defendant's violations of the EFTA, as alleged herein;

  b.  Defendant's waiver of rights afforded to consumers under the EFTA;

  c.  Defendant's violations of the FDCPA, as alleged herein;

  d.  the availability of statutory penalties; and

  e.  the availability of attorneys' fees and costs.

52.     Upon information and belief, absent a class action, Defendant's violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

**COUNT I: VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT, 15 U.S.C. §1693l, AS TO PLAINTIFF AND THE EFTA CLASS**

53.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-52.

54.     Section 1693e(a) of the EFTA provides in pertinent part:

A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. **A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer.** The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

(emphasis added).

55.     Section 1693l of the EFTA provides in pertinent part:

**No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter.** Nothing in this section prohibits, however, any writing or other agreement which grants to a consumer a more extensive right or remedy or greater protection than contained in this title or a waiver given in settlement of a dispute or action

(emphasis added).

56.     Defendant's form ACH Agreement contains the following provision:

I hereby authorize Pioneer Credit Recovery to initiate an ACH withdrawal or credit charge from my bank account or credit card as shown above.   This authority is to remain in full force and effect until Pioneer Credit Recovery receives written notification from me of its termination in such time and in such manner as to afford Pioneer Credit Recovery and the bank a reasonable opportunity to act on it.

57.     Defendant violated 15 U.S.C. § 1693l by entering into written agreements with Plaintiffs and members of the EFTA Class that contained provisions constituting waivers of Plaintiffs' and the Class members' rights under the EFTA and the regulations promulgated by the Consumer Financial Protection Bureau—specifically the rights to (1) cancel preauthorized electronic fund transfers orally, (2) cancel preauthorized electronic fund transfers by providing notice to the financial institution, and (3) cancel preauthorized electronic fund transfers by providing three-days' notice.

58.     As a result, Defendant, via its form ACH Agreement, waives valuable consumer rights set forth under 15 U.S.C. §1693e(a), in violation of 15 U.S.C. §1693l.

**COUNT II: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §1692e, AS TO PLAINTIFF AND THE FDCPA CLASS**

59.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-52.

Case 1:15-cv-00152-JTC   Document 1   Filed 02/17/15   Page 11 of 13

60.     The FDCPA at 15 U.S.C. §1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

61.     Upon information and belief, when a consumer agrees to a payment, and prior to each payment being withdrawn from the consumer's account, Defendant sends the consumer its "Notice of Intent to Debit Account" correspondence.

62.     Upon information and belief, Defendant attaches to each of its "Notice of Intent to Debit Account" correspondence a blank copy of the ACH Agreement, and advises the consumer to complete the ACH Agreement in order "to pay by credit card or bank autowithdrawal."

63.     Upon information and belief, Defendant does so even when the consumer is already making payments by credit card, bank autowithdrawal, or demand draft.

64.     Such conduct would lead the least sophisticated consumer to believe that by completing and returning the ACH Agreement, the consumer could direct Defendant to take payments from a new bank account, or a different credit card, other than the account or credit card from which Defendant was previously taking payments.

65.     However, Defendant's policy, as set forth above, is to require consumers to change the account or credit card they are using for payment by calling Defendant and requesting such a change over the telephone.

66.     As such, the mailing of the "Notice of Intent to Debit Account" correspondence to consumers whose accounts Defendant is already withdrawing payments from, or whose credit cards Defendant is already charging, is misleading to the least sophisticated consumer.

67.     Such conduct has the likelihood of causing significant harm, as it did to Plaintiffs, where Defendant attempted to withdraw money from an account that Plaintiffs had closed, resulting in a late payment of the Debt by Plaintiffs.

68.     As such, Defendant violated 15 U.S.C. § 1692e.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a)      Determining that this action is a proper class action and designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

b)      Adjudging and declaring that Defendant violated 15 U.S.C. § 1693l and enjoining Defendant from further violations of 15 U.S.C. §1693l with respect to Plaintiffs and the other members of the EFTA Class;

c)      Adjudging and declaring that Defendant violated 15 U.S.C. § 1692e and enjoining Defendant from further violations of 15 U.S.C. §1692e with respect to Plaintiffs and the other members of the FDCPA Class;

d)      Awarding Plaintiffs and members of the EFTA Class statutory damages pursuant to 15 U.S.C. §1693m(a)(2)(B);

e)      Awarding Plaintiff and members of the FDCPA Class statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B);

f)      Awarding Plaintiff and members of the FDCPA Class actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

g)      Awarding Plaintiff and members of the Classes their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. §1693m(a)(3), and 15 U.S.C. § 1692k(a)(3); and

h)      Awarding other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

Plaintiffs are entitled to and hereby demand a trial by jury.


DATED:  February 17, 2015                    Respectfully submitted,


*/s/ Jeanne Lahiff*
_____
**Jeanne Lahiff**
16 South Avenue West, #178
Cranford, NJ 07016
Telephone: (862) 812-0623
Fax: (866) 565-1327
rsvp2jeanne@gmail.com

**James L. Davidson**\*
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL  33431
Telephone: (561) 826-5477
Fax: (561) 961-5684
jdavidson@gdrlawfirm.com

Counsel for Plaintiff and the proposed Classes

\* To seek admission *pro hac vice*